Larry Wayne HALE, Plaintiff–Appellant,

v.

TALLAPOOSA COUNTY, a political sub-division of the State of Alabama, Joe Smith, individually and as Sheriff of Tallapoosa County, Joe Flurry, Defen-dants–Third–Party Plaintiffs–Appellees,

Alabama Department of Corrections, Mor-ris L. Thigpen, individually, and in his Official Capacity of Commissioner of the Alabama Department of Corrections, Tommy Herring, Commissioner, State of Alabama, Department of Corrections, Third–Party Defendants.

No. 93–6788.

United States Court of Appeals, Eleventh Circuit.

May 2, 1995.

John I. Cottle, III, Bowles & Cottle, Tallassee, AL, for appellant.

E. Paul Jones, Alexander City, AL, Andrew W. Redd, Dept. of Corrections, Ellen R. Leonard, Montgomery, AL, for appellees.

Before CARNES and BARKETT, Circuit Judges, and JOHNSON, Senior Circuit Judge.

BARKETT, Circuit Judge:

Larry Wayne Hale appeals from summary judgments in favor of Tallapoosa County Sheriff Joe Smith, jailer Joe Flurry and Tallapoosa County (the "defendants"). Hale's 42 U.S.C. § 1983 suit, based on a violation of the Eighth and Fourteenth Amendments to the United States Constitution, alleged that he was beaten while detained at the Tallapoosa County Jail as a result of defendants' deliberate indifference to an excessive risk of violence that existed at the jail. The district court found insufficient evidence of deliberate indifference and causation, granted summary judgment for defendants and dismissed the claim. For the reasons that follow, we affirm as to Flurry and reverse as to Smith and Tallapoosa County.

### BACKGROUND [1]

Larry Wayne Hale was detained at the Tallapoosa County Jail (the "jail") in May 1990 after being arrested for failing to appear on a marijuana charge. Upon receiving Hale at 8:30 a.m., jailer Joe Flurry placed him in a 13–by–20–foot day cell; the cell was known as the "bullpen" because its small

---

1. Because this case involves the grant of summary judgment, we view the facts in the light most favorable to Hale, the non-moving party. *Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir. 1994). Of course, the "facts" as determined in this light may not be the facts ultimately found by the jury.

confines often held thirteen or more inmates during times of overcrowding, including the day Hale was detained.

Overcrowding had existed at the jail for about two years at the time of Hale's detention. The jail was especially overcrowded in May 1990, causing inmates and detainees to sleep on the floor of the bullpen, sometimes without mattresses or blankets. During such times of overcrowding, fights occurred between inmates on a regular basis and occasionally resulted in injuries requiring medical attention and hospitalization.

Hale shared the bullpen on the day of his detention with assorted other detainees and inmates, who were not segregated based on their proclivity for violence or the reasons for their confinement. Bobo Greer, who was being held for murder and attempted murder, was among those in the bullpen with Hale. At 6:00 p.m., Greer and another inmate, Dee Riley, left the bullpen and upon their return told Hale they had beaten another inmate. Hale became concerned for his safety, but did not share his concern with Flurry, the sole jailer on duty, or with anyone else.

Shortly thereafter, Flurry opened the doors between the bullpen and two adjoining bed cells, leaving the inmates to decide among themselves who would stay in the bed cells, which had beds, and who would stay in the bullpen. At 7:00 p.m., Flurry closed the doors between the bullpen and bed cells and returned to his quarters, which were out of earshot and eyesight of the bullpen. Hale, who had no mattress, blanket or pillow to sleep on, remained in the bullpen with twelve others, including Greer and Riley.

Flurry next checked on the bullpen at 9:30 p.m., when he was greeted with hostile obscenities. About an hour later, Greer and Riley punched and kicked Hale repeatedly without provocation, leaving him with a cut, bruises and contusions to his head, and an injured elbow. Hale yelled for help during the beating, but received no response from Flurry, who did not check on the bullpen during the remainder of his shift, which end-

ed at midnight. Hale's cries for help did cause the beating to stop, however.

Hale was discovered bruised and bloodied at about 1:30 a.m. by jailer Johnson, who had relieved Flurry at midnight. Fearing retaliation, Hale did not immediately tell Johnson that he had been beaten; instead, he said that he had injured himself falling off a table. Once out of the bullpen, however, Hale told Johnson of the beating and was allowed to spend the night elsewhere in the jail.

Hale filed suit against Flurry and Smith in their individual capacities, and against Tallapoosa County (the "County") through Smith in his official capacity. The complaint alleged in part that an excessive risk of inmate-on-inmate violence existed at the jail, that the defendants were deliberately indifferent to this risk, and that this deliberate indifference caused his beating. Following limited discovery, defendants moved for summary judgment, arguing simply that "there are no material issues of law and fact." Hale responded with affidavits, depositions and other evidence, arguing that his evidence was sufficient to defeat summary judgment. The court granted summary judgment in favor of defendants, finding Hale's evidence insufficient to support his Eighth Amendment claim, and entered final judgment for defendants.[2] This appeal followed.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir.1994). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In other words, summary judgment is warranted if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to plaintiffs, could not reasonably return a verdict in plaintiffs' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

---

**2.** Hale also made a pendent, state-law claim grounded in negligence and recklessness, which the court ultimately dismissed for lack of pendent jurisdiction.

## DISCUSSION

■ Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983.[3] There is no dispute that the defendants acted under color of state law. The issue is whether defendants' conduct deprived Hale of a federally protected right, to wit, his constitutional rights under the Eighth Amendment.[4]

■ It is well settled that "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994) (quotation & citations omitted). Thus, to survive summary judgment on his section 1983, Eighth Amendment claim, Hale was required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. *Id.; LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

■ Moreover, to prevail against Smith and Flurry in their individual capacities, Hale was required to show that they were personally involved in acts or omissions that resulted in the constitutional deprivation. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986). To prevail against the County through Smith in his official capacity, Hale was required to prove that the deprivation resulted from "(1) an action taken or policy made by an official responsible for making final policy in that area of the [County's] business; or (2) a practice or custom

that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir.1994). Because Sheriff Smith was the County official responsible for making final policy for the jail, the County would be liable if Smith's actions or policies amounted to deliberate indifference to a substantial risk of serious harm which resulted in Hale's injury.

### Jailer Flurry

■ The only action by Flurry that Hale argues constituted deliberate indifference to a substantial risk of serious harm was Flurry's failure to check on the bullpen between 9:30 p.m. and midnight, when his shift ended. Hale offered evidence that Flurry customarily made rounds every thirty minutes and that a jailer's failure to make rounds at brief intervals greatly increases the risk of inmate-on-inmate violence. The only portion of the two-and-a-half hours relevant to Hale's claim, however, is the first hour, as the beating occurred at approximately 10:30 pm, an hour after Flurry's last rounds. We find Hale's evidence insufficient to support the level of deliberate indifference and causal connection necessary to hold Flurry personally responsible.

### Sheriff Smith and Tallapoosa County

■ We next consider whether Hale presented sufficient evidence against Sheriff Smith and the County. Hale first was required to produce evidence that he was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, — U.S. at —, 114 S.Ct. at 1976; *see LaMarca*, 995 F.2d at 1535 (explaining that "unjustified constant and unreasonable exposure to

---

**3.** Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law ... [or] suit in equity." 42 U.S.C. § 1983.

**4.** We note that Hale based his suit on the Cruel and Unusual Punishment Clause of the Eighth Amendment. Because he was a detainee and not a prisoner, however, his constitutional rights

arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). As did the district court, however, we may properly analyze the claim under the Eighth Amendment, as "[c]ertainly states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights," *id.* at 1573–74.

violence" violates Eighth Amendment); *Zatler*, 802 F.2d at 400 (stating that inmate has constitutional right to protection from constant threat of physical assault from inmates).

Hale produced evidence that inmate-on-inmate violence occurred regularly when the jail was overcrowded, as it was during May 1990 and the two preceding years. Moreover, the evidence indicated that the violence was severe enough to require medical attention and even hospitalization on occasion. A jury viewing this evidence and all reasonable inferences therefrom in the light most favorable to Hale reasonably could find that a substantial risk of serious harm existed at the jail. Hale thus met his burden on this element.

■ Notwithstanding the sufficiency of Hale's evidence of a substantial risk of serious harm, he also was required to produce evidence that Smith was deliberately indifferent to that risk. More specifically, Hale was required to show both that Smith subjectively knew of the substantial risk of serious harm and that he knowingly or recklessly "disregard[ed] that risk by failing to take reasonable measures to abate it," *Farmer*, — U.S. at —, 114 S.Ct. at 1984; *see LaMarca*, 995 F.2d at 1535. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, — U.S. at —, 114 S.Ct. at 1981. Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Hale presented depositions, affidavits and other evidence supporting a finding that Smith subjectively knew that a substantial risk of serious harm existed at the jail. For example, Smith himself testified in deposition that he knew that inmate-on-inmate violence was occurring on a regular basis during May 1990 and other periods of overcrowding; Smith also testified that he knew the violence sometimes resulted in injuries requiring medical treatment. Additionally, Hale's expert attested that given the conditions existing in the months preceding May 1990, it was plainly foreseeable to a reasonable law enforcement official that a violent attack was likely to occur.

■ In response, Sheriff Smith emphasizes that Hale did not inform anyone that he feared an attack generally or that he feared an attack specifically from Greer and Riley. Although relevant, a claimant's "failure to give advance notice [of an attack] is not dispositive," *Farmer*, — U.S. at —, 114 S.Ct. at 1984. Thus, an official may not escape liability merely by showing that he did not know the claimant was likely to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault. *Id.* at —, 114 S.Ct. at 1982. In other words, Hale was not required to show that Smith knew "precisely who would attack whom," *id.*, but only that Smith had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence. *See id.* We find the evidence sufficient to allow a jury reasonably to conclude that Hale met this standard.

■ Mere knowledge of a substantial risk of serious harm, however, is insufficient to show deliberate indifference. Hale also was required to produce evidence that, with knowledge of the substantial risk of serious harm, Smith knowingly or recklessly "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, — U.S. at —, 114 S.Ct. at 1984; *see LaMarca*, 995 F.2d at 1535. Thus, under this standard, a jury could reasonably find that Smith "fail[ed] to take reasonable measures to abate" a known risk of harm if the evidence showed that he knew of ways to reduce the harm but knowingly declined to act, or that he knew of ways to reduce the harm but recklessly declined to act.

Hale argues that he offered evidence of several reasonable measures to reduce the risk of violence that were available to Smith. These measures included classifying and segregating the inmates based on their likelihood for violence; assigning inmates to cells and bunks rather than letting them choose for themselves; adequately training jailers; and adequately supervising and monitoring the inmates. Hale also offered evidence that

Smith did not pursue these measures. The evidence showed, for example, that the jail had no policy for classifying and segregating the inmates and that Hale, who was detained for failure to appear, was held with Bobo Greer, who was detained for murder and attempted murder; that inmates were not assigned to specific cells or beds; that the jail had no written training policy and that Flurry had received no professional training at all; and that the jailer was stationed out of eyesight and earshot of the bullpen.

Smith responds that he was not deliberately indifferent primarily because he worked toward construction of a new jail which, he contends, was the only way to reduce the risk of violence. While any such efforts by Smith would appropriately be considered by a jury determining whether Smith was deliberately indifferent, such efforts would not necessarily absolve him or the County of liability. A jury could find that despite any efforts he made toward construction of the new jail, Smith was deliberately indifferent by disregarding "alternative means" or interim measures for reducing the risk of violence such as those advanced by Hale, see *LaMarca*, 995 F.2d at 1536. While consideration of alternatives available to Smith "comes perilously close to second-guessing the difficult choices that prison officials must face," *id.* at 1538, such consideration "directly addresses the question of whether monetary restraints frustrated [Smith's] good faith efforts, or whether he knowingly or recklessly disregarded solutions within his means," *id.* We conclude that Hale produced sufficient evidence to go to a jury for a determination of whether Sheriff Smith and the County were deliberately indifferent under the facts presented.

■■■ Finally, Hale was required to produce evidence of causation between Sheriff Smith's deliberate indifference and Hale's injury. More specifically, Hale was required to show two causal links: first, a link between Smith's allegedly deliberately indifferent acts and omissions and the excessive risk of violence; and second, a link between the excessive risk of violence and his injury. *Id.* We have described the relationship between these two links as follows:

If a plaintiff establishes a causal link between the defendant's acts or omissions and the infirm condition, the defendant is precluded from contending that the unconstitutional condition was not at least a proximate cause of . . . injuries that arose from that condition. This is not to say that a plaintiff need not show a causal link between the constitutionally infirm condition and the alleged injuries. Rather, the finding that a prison condition offends the Eighth Amendment presupposes the distinct likelihood that the harm threatened will result. The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries, here the injuries brought about by the assaults.

*Id.* (quotation & citation omitted).

Hale argues that without Smith's failure to take meaningful action as described above, the infirm condition—the excessive risk of violence—would not have existed, and he would not have been beaten. In *LaMarca*, we considered the causal relationship between a prison official's failure to improve prison safety and an excessive rate of violent, inmate-on-inmate, sexual assaults. We confirmed that "due to [their] very nature as acts of violence, the rapes that occurred are not isolated incidents of sexual conduct, but rather flow directly from these lawless prison conditions at GCI. . . . [These conditions created] the background and climate which . . . preordained homosexual rapes and other inmate assault[s]." *Id.* at 1539 (quotation omitted; ellipses & brackets in *LaMarca*). Because a "finding that a prison condition offends the Eighth Amendment presupposes the distinct likelihood that the harm threatened will result," *id.* at 1538, we further held that "[t]he evidence thus permits a finding of a causal link between the objectively intolerable conditions at GCI and the plaintiffs' injuries," *id.* at 1539.

As in *LaMarca*, Hale's evidence is sufficient to support a reasonable jury determination that the excessive risk of violence flowed from an atmosphere of deliberate indifference reflected in Smith's failure to classify or segregate violent from non-violent inmates,

assign inmates to cells or beds, adequately train the jailers, and adequately supervise and monitor the inmates. As in *LaMarca,* a reasonable jury could find that the beating was caused by the excessive risk of harm which resulted from the atmosphere of deliberate indifference. Accordingly, Hale presented sufficient proof of causation to survive summary judgment.[5]

### CONCLUSION

For the foregoing reasons, we *affirm* the judgment as to jailer Joe Flurry and *reverse* the judgments as to Sheriff Smith in his individual and official capacities and as to Tallapoosa County.

AFFIRMED in part; REVERSED in part; REMANDED.

---

5. In finding a lack of causation, the district court apparently relied in part on a perceived lack of evidence tying the need for Hale's elbow surgery to the beating. Our review of the record indicates that Hale presented sufficient evidence for a jury to find that the beating injured his elbow and caused the need for surgery. Moreover, any inability to link the beating with the need for the surgery would go not to liability, but rather to the amount of damages.