[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13610
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-23013-DPG

PLEADRO J. SCOTT,

Plaintiff–Appellee,

versus

MIAMI DADE COUNTY, et al.

Defendants,

R. GOMEZ,
C. WESTON,

Defendants–Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 1, 2016)

Before HULL, MARCUS, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Pleandro Scott, a pre-trial inmate in the custody of the Miami–Dade County Department of Corrections, filed a *pro se* § 1983 action[1] against Defendants Corporal Rolando Gomez and Lieutenant Constantina Weston. Plaintiff's complaint alleges that Defendants were deliberately indifferent to his safety in violation of the Fourteenth Amendment. Defendants moved to dismiss Plaintiff's complaint on qualified immunity grounds. The district court denied Defendants' motion to dismiss. Defendants appealed, and we now affirm.

## I.    BACKGROUND

### A. Facts[2]

At all relevant times, Plaintiff was an inmate in the custody of the Miami–Dade County Department of Corrections awaiting trial for various charges, including sexual battery with a weapon. On June 20, 2011, Plaintiff was assaulted by a group of gang members at Turner Guilford Knight Detention Center. Later that day, Corporal Tompkins, who is not a party here, placed Plaintiff in a single-man cell and listed the names of the inmates involved in the assault on Plaintiff's

---

[1] *See* 42 U.S.C. § 1983; *see also Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) ("Section 1983 creates a private civil rights cause of action for the deprivation of federal rights by persons acting under color of state law.").

[2] At this stage, "we accept all factual allegations as true and consider them in the light most favorable to [] [P]laintiff." *Brooks*, 800 F.3d at 1300.

jail card so that prison officials would know to keep Plaintiff separate from these gang-affiliated inmates. However, the violent threats persisted. Plaintiff notified correctional officers of the continued threats, filed a grievance, and wrote to a state judge to apprise him of the threats. On December 18, 2012, the judge recommended that Plaintiff be transferred to a different facility.

Plaintiff was transferred to Metro West Detention Center in January 2013. Unfortunately, gang members from the same gang that had given Plaintiff trouble at Turner Guilford were housed at Metro West, in the same unit that Plaintiff had been assigned to. The gang members at Metro West threatened Plaintiff and told other inmates that Plaintiff was a rapist and a snitch.

On March 5, 2013, Plaintiff filed a grievance requesting to be separated "from all inmates at all times." Around the same time, Plaintiff notified Corporal Gomez of his concerns, and Corporal Gomez "informed [Plaintiff] that he w[ould] make sure that nothing happen[ed] to [Plaintiff]." Plaintiff received a response to his grievance on March 13, 2013. The response asked Plaintiff to identify by name the inmates that were threatening him. Notwithstanding Corporal Gomez's assurances and Plaintiff's grievance, Plaintiff continued to be placed with other inmates during recreation. These inmates continued to threaten Plaintiff, so he stopped partaking in recreation time.

3

On March 15, Plaintiff alerted Sergeant Jefferson[3] that other inmates had threatened Plaintiff and that he was concerned for his safety.  In response, Sergeant Jefferson and Corporal Gomez interviewed Plaintiff to find out more information.  During the interview, Plaintiff explained that he "[had been] assaulted a number of times throughout [his] stay in Miami Dade County Department of Corrections" and that he had been placed in protective custody after the June 20 assault.  Plaintiff further explained that members of the gang that had attacked him on June 20 were housed in his unit and continued to threaten him.  He requested that he be "kept separate from all inmates at all times."  Sergeant Jefferson and Corporal Gomez assured Plaintiff that he would "not [e]ncounter contac[t] with any other inmates."

Yet Plaintiff continued to have to take recreation time with other inmates.  Thus, on March 25, 2013, Plaintiff filed another written grievance, identifying the inmates who had threatened him, including Anterell Dean.  Plaintiff's grievance referred back to his original grievance and again requested that he be kept separate from all inmates.  Thereafter, Lieutenant Weston went to Plaintiff's cell with Corporal Gomez, asked Plaintiff what more could be done given that he was already in a single-man cell, and requested that Plaintiff sign a grievance response form.  Plaintiff explained that he had been assured more than once that he would not come into contact with other inmates but that officers continued to try to move

---

[3] The district court granted Sergeant Jefferson's motion to dismiss.  Plaintiff does not challenge that ruling on appeal.

4

him to cells with other inmates and that he was being forced to take recreation at the same time as other inmates. Lieutenant Weston "explained that she [would] make sure that the proper steps [were] tak[e]n to [e]nsure that [Plaintiff] [did] not have contac[t] with other inmates." Accordingly, Plaintiff checked the "resolved" box on the grievance response form.

On May 15, 2013, Plaintiff was transported from Metro West to the courthouse for a court appearance. There, he was placed in a holding cell with inmate Anterell Dean. Plaintiff told an officer that he could not be in the same cell as Dean. Plaintiff explained that he had to be housed separately from all inmates at all times. The officer stated that this instruction did not appear on Plaintiff's jail card and, accordingly, Plaintiff would have to remain in the cell with Dean. As the officer locked the door to the cell, Plaintiff asked her to call Metro West to verify that Plaintiff was to be kept separate from Dean. As she walked away, the officer told Plaintiff that she would place the call.

When Plaintiff and Dean were alone in the cell, Dean "struck [Plaintiff] with his fist in [Plaintiff's] face and [the] top of [Plaintiff's] head and proceeded to punch [Plaintiff]." When Plaintiff tried to get up, Dean slammed him against the toilet and the wall, and continued to punch him. Plaintiff swung back. An officer passed by the cell and broke up the fight.

5

Plaintiff completed an incident report documenting the encounter. He woke up the following day with "sever[e] pain in [his] jaw, head, neck, back and shoulder." A nurse administered Advil to ease the pain. Back at Metro West, Plaintiff was transferred out of Dean's unit. He submitted a grievance concerning the incident with Dean on May 20, 2013. The response to Plaintiff's grievance stated the facility "had never [] approved for [Plaintiff] an[d] [] Dean to be kept separate."

## B. Procedural History

Plaintiff filed a complaint on August 21, 2013, alleging that his constitutional rights had been violated by Defendants' failure to ensure his safety while incarcerated. The district judge referred the case to a magistrate judge. Plaintiff amended his complaint on July 8, 2014, and again on January 15, 2015. The operative complaint lists as defendants the Miami–Dade Department of Corrections, Lieutenant Weston, Sergeant Jefferson, Corporal Gomez, and "Officer Jane Doe" (the officer who placed Plaintiff in the cell with Dean at the courthouse). Corporal Gomez and Lieutenant Weston moved to dismiss Plaintiff's second amended complaint on qualified immunity grounds. The magistrate judge issued an R&R recommending that the motion to dismiss be denied. The district court adopted the R&R and denied Defendants' motion to dismiss. This interlocutory appeal followed.

6

## II.  DISCUSSION

"We have jurisdiction to review the denial of the defense of qualified immunity on interlocutory appeal pursuant to 28 U.S.C. § 1291."  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (citation omitted).  A district court's order denying a motion to dismiss on qualified immunity grounds is reviewed *de novo*.  *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013).  In determining whether a complaint survives a motion to dismiss, "we ask whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "We accept all factual allegations as true and consider them in the light most favorable to the plaintiff."  *Id.* at 1300.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  Plaintiff does not dispute that Defendants were acting within the scope of their discretionary authority at all relevant times.  Thus, to analyze whether Defendants are entitled to qualified immunity, we ask whether Plaintiff has alleged a violation of a constitutional right,

and, if so, whether that constitutional right was clearly established when the violation occurred.  *Franklin*, 738 F.3d at 1249.

## A. Violation of a Constitutional Right

Our first task is to determine whether the facts alleged in Plaintiff's second amended complaint make out a violation of the Fourteenth Amendment.  "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment."[4]  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1358 (11th Cir. 2003)); *accord Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[P]rison officials must . . . 'take reasonable measures to guarantee the safety of the inmates.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984))).  A deliberate indifference claim thus consists of three elements:  "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### 1.  Substantial Risk of Serious Harm

The district court adopted the magistrate judge's R&R, which concluded that Plaintiff had alleged facts that satisfy all three elements of a deliberate indifference

---

[4]  "Where, as here, the plaintiff is a pretrial detainee . . . , the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment, governs our analysis."  *Goodman*, 718 F.3d at 1331 n.1.  Because the standard is the same in both contexts, we apply decisional law involving Eighth Amendment deliberate indifference claims.  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

8

claim. Regarding the first element, the magistrate judge stated that "[t]here is no dispute that plaintiff plead[ed] the existence of a substantial risk of serious harm." We conclude that Plaintiff has alleged facts that, if true, demonstrate that he faced a substantial risk of serious harm.

This Court has previously recognized that inmate-on-inmate violence can amount to serious harm. *See, e.g.*, *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) ("We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm."); *Hale*, 50 F.3d at 1583 ("Hale produced evidence that inmate-on-inmate violence occurred regularly when the jail was overcrowded . . . . Moreover, the evidence indicated that the violence was severe enough to require medical attention and even hospitalization on occasion. A jury viewing this evidence . . . reasonably could find that a substantial risk of serious harm existed at the jail."). The question, then, is whether the *risk* of serious harm to Plaintiff was "substantial."

Plaintiff alleges that he had previously been attacked by members of a prison gang, and members of that gang continued to threaten him. The fact of an earlier attack made the ongoing threats credible. And the threats were at least credible enough to cause Plaintiff to forgo his recreation time to avoid being around other inmates. On these facts, a jury could conclude that the risk of an attack by gang members was substantial.

On appeal, Defendants rely heavily on our recent decision in *Brooks v. Warden*, 800 F.3d 1295 (2015), which was issued two months after the district court entered its order denying Defendants' motion to dismiss.  Brooks was an inmate in the special management (SMU) at a Georgia prison.  Brooks alleged that another prisoner had threatened him with physical and sexual assault.  *Id.* at 1298.  Brooks reported these threats, but no action was taken.  *Id.*  Moreover, the responsible prison officials were aware that the cell doors in the SMU would occasionally open unintentionally.  *Id.*  One day, all the cell doors in the SMU opened simultaneously, causing a riot.  *Id.*  During the riot, Brooks was "brutally attacked by the inmate who had threatened him."  *Id.*

Brooks sued the responsible prison officials under § 1983.  The district court granted the officials' motion to dismiss.  This Court affirmed, holding that Brooks "ha[d] failed to plausibly allege that a substantial risk of serious harm existed prior to the prison riot."  *Id.* at 1301.  Defendants argue that the facts here are materially similar to the facts in *Brooks*, and thus Plaintiff has not adequately pleaded a substantial risk of serious harm.  *Brooks*, however, is distinguishable:  "For Brooks to [have] face[d] serious harm, he and [his attacker] both needed to be released from their cells simultaneously in an unsupervised situation."  *Id.*  Critically, Brooks had failed to allege that he and his attacker had "ever been let out of their cells at the same time."  *Id.*  Here, Plaintiff alleges that he repeatedly made clear, in

both his grievances and his conversations with Corporal Gomez and Lieutenant Weston, that he *was* continuing to encounter other inmates, in particular during recreation time. And, here, far from a chance run-in during a prison riot, Plaintiff and Dean were *intentionally* placed in the same cell, uncuffed, and apparently without direct supervision.[5] Thus, accepting Plaintiff's allegations as true, Dean's attack on Plaintiff was not a "freak accident" of the sort at issue in *Brooks*. *Id.* at 1302.

Defendants also seem to argue that Plaintiff did not face a substantial risk of serious harm because he was already housed in a single-man cell and was in protective custody.[6] The problem with this argument is that, even after Plaintiff was housed in a single-man cell and in protective custody, officers allegedly tried to move Plaintiff to shared cells and to force him to take his recreation time with other inmates. And Plaintiff was still receiving threats from gang members. So Plaintiff has adequately alleged that even though he had been placed in a single-man cell, he still faced a substantial risk of serious harm.

---

[5] Although neither Defendant was the officer who actually placed Plaintiff and Dean in the same cell, as will be discussed below, Plaintiff alleges that neither Defendant took measures necessary to ensure that Plaintiff would be kept separate from other inmates. That is, Defendants could have, but did not, take steps to ensure that another officer would not place Plaintiff in the same cell as Dean.

[6] It is not clear whether Plaintiff remained in protective custody after he was transferred from Turner Guilford Knight to Metro West. Plaintiff's brief states that after he was transferred, he "requested to be placed into protective custody even though he was suppose[d] to [have] already been assigned to be housed under protective custody."

Defendants also note that Plaintiff indicated on a grievance response form that the issue was "resolved." But Plaintiff alleges that he checked that box only after Lieutenant Weston assured him that she would make sure he was kept separate from other inmates. So the fact that Plaintiff checked the "resolved" box does not indicate that there was no risk of harm; it shows only that Lieutenant Weston promised him that she would promptly address the then-extant risk.

## 2. Deliberate Indifference

The second element of a deliberate indifference claim has both a subjective and an objective component. To satisfy the subjective component, a plaintiff must allege facts that would allow a jury to conclude that the defendant actually knew that the plaintiff faced a substantial risk of serious harm. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2015). To satisfy the objective component, a plaintiff must allege facts showing that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner. *See id.*

Our decision in *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014), makes clear that Plaintiff's complaint adequately alleges that both Corporal Gomez and Lieutenant Weston were subjectively aware that Plaintiff faced a substantial risk of serious harm. *Caldwell* also involved an inmate-on-inmate attack. The defendant–officials argued that Caldwell had not adduced

12

enough evidence to create a genuine issue of material fact with respect to the defendants' subjective awareness of a substantial risk of serious harm to Caldwell. We disagreed. In pertinent part, we explained that the evidence showed that Caldwell told the defendants that he "feared for his life if he was returned to a cell with [his cellmate]" and that a jury could reasonably infer that Caldwell had a well-founded basis for his fear because Caldwell's cellmate had previously used Caldwell's personal belongings to start a fire in their cell, and the officers were aware of this fire. *Id.* at 1101.

The allegations in Plaintiff's complaint here follow a similar path. Plaintiff alleged that he informed Defendants, verbally and in writing, that he feared for his safety if he was not kept separate from other inmates, including members of the prison gang and Dean in particular. Plaintiff's allegations make clear that this fear was well-founded given that members of the gang had targeted Plaintiff, had previously assaulted him, and continued to threaten Plaintiff. Accordingly, Plaintiff adequately alleged that Defendants were subjectively aware of a substantial risk of serious harm to Plaintiff.

To establish the second prong of the deliberate indifference element, a plaintiff must show that the officer responded in an objectively unreasonable manner to the substantial risk of serious harm. "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm

but knowingly [or] recklessly declined to act." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 620 (11th Cir. 2007) (quotation marks and citation omitted); *accord LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (explaining that the proper inquiry is whether a prison official "knowingly or recklessly disregarded solutions within his means").

Plaintiff alleges facts from which a jury could conclude that Defendants responded to Plaintiff's complaints of a substantial risk of serious harm in an objectively unreasonable manner. In short, Plaintiff asserts that although Defendants paid his concerns lip service, repeatedly assuring him that they would take the necessary steps to ensure that he would not encounter other inmates, Defendants failed to take *any* action. Plaintiff argues that it was objectively unreasonable for Defendants to do nothing in response to the risk he faced from gang members, and that it was especially unreasonable to have failed to follow standard operating procedure by indicating on Plaintiff's jail card that he had to be kept separate from all other inmates at all times.[7] Assuming that Defendants did nothing, or next to nothing, in response to the threats that Plaintiff had received, a jury could find that Defendants did not respond reasonably to the substantial risk of serious harm Plaintiff faced. *See Hale*, 50 F.3d at 1584 ("A jury could find that

---

[7] We held in *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000), that a firemedic's "failure to follow procedures does not, by itself, rise to the level of deliberate indifference." But as noted, Plaintiff asserts that Defendants failed to take *any* action to protect him from Dean and other gang members. He simply cites the jail card notation as one measure Defendants could have taken.

14

despite any efforts [the sheriff] made . . . , [he] was deliberately indifferent by disregarding 'alternative means' or interim measures for reducing the risk of violence such as those advanced by Hale."  (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993))).

Defendants argue that Plaintiff does not claim to have encountered any other inmates from the time he conferred with Defendants in March until the attack in May.  The implication, we take it, is that either the situation self-corrected or Defendants took action to correct it.  If the former, then Defendants were under no duty to act, and if the latter, then Defendants were not deliberately indifferent.  Although it is true that Plaintiff did not allege that he encountered other inmates at Metro West after his final discussion with Defendants, at this stage, we simply do not know what steps Defendants took in response to Plaintiff's complaints, if any.  Plaintiff alleges that they did nothing and specifically cites their failure to indicate on his jail card that he could not be placed with any other inmate under any circumstances.  Thus, Plaintiff has adequately alleged that Defendants "knew of ways to reduce the harm but knowingly [or] recklessly declined to act." *Rodriguez*, 508 F.3d at 620 (quotation marks and citation omitted).  Of course, discovery may reveal that Defendants did take some measures in response to Plaintiff's concerns, and Defendants are "not precluded from asserting the qualified immunity defense throughout the proceedings as the facts develop[]."

15

*Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1289 (11th Cir. 2000); *Bowen v. Warden*, __ F.3d __, 2016 WL 3435501, at *9 (11th Cir. June 22, 2016) ("This case may look very different as it moves beyond the pleadings and the record is more fully developed.").

### 3. Causation

Defendants do not dispute that Plaintiff adequately pleaded the causation element of his Fourteenth Amendment claim. Accordingly, we need not address causation at this juncture. *See Bowen*, __ F.3d __, 2016 WL 3435501, at *5 n.21 (collecting cases). But Defendants are not precluded from raising issues concerning causation as the facts develop. *Id.* at *9.

## B. Clearly Established Constitutional Right

Because Plaintiff's second amended complaint sufficiently alleges a constitutional violation, "we next determine whether preexisting law clearly established that [] [D]efendants' conduct amounted to a constitutional violation." *Cottone v. Jenne*, 326 F.3d 1352, 1359 (11th Cir. 2003). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). We look to the law "as interpreted at the time by the United States

16

Supreme Court, the Eleventh Circuit, or the Florida Supreme Court." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).

This Court has held that a plaintiff can demonstrate that the contours of the allegedly violated constitutional right were clearly established in at least two ways. *Id.* at 1255. First, a plaintiff "may show that 'a materially similar case has already been decided.'" *Id.* (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)). Second, a plaintiff "can point to a 'broader, clearly established principle [that] should control the novel facts [of the] situation.'" *Id.* (quoting *Mercado*, 407 F.3d at 1159); *accord United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question."); *Hope*, 536 U.S. at 739 (stating that a violation can be clearly established even absent a case "involving the [] action in question"). Here, the broader principle laid down in *Farmer v. Brennan*, 511 U.S. 825 (1994), "control[s] the novel facts" pleaded in Plaintiff's complaint.[8] *See Castro v. Cty. of Los Angeles*, 797 F.3d 654, 664 (9th Cir. 2015) ("*Farmer* sets forth the contours of the right to be free from violence at the hands of other inmates with sufficient

---

[8] Farmer, a transsexual inmate, was brutally beaten and raped by a cellmate. Farmer sued various prison officials under § 1983 alleging that the officials were deliberately indifferent to Farmer's safety in violation of the Eighth Amendment. *Id.* at 829.

clarity to guide a reasonable officer."); *Young v. Selk*, 508 F.3d 868, 975 (8th Cir. 2007) (same). In short, the Supreme Court made clear in *Farmer* that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners," *Farmer*, 511 U.S. at 833, and that an official may be liable if he knows of and disregards a substantial risk of an inmate-on-inmate attack "by failing to take reasonable measures to abate [the risk]." *Id.* at 847; *see also id.* at 837.

Plaintiff's complaint alleges that Defendants took *no measures* to prevent Dean's attack even though Plaintiff had repeatedly warned Defendants that he was being threatened by Dean and other members of the gang that had previously assaulted him. In 2013, no reasonable officer could have believed that doing *nothing* in the face of these circumstances was constitutional. *See Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1034 (11th Cir. 2001) (en banc) ("[A]t the time of the assaults in this case, it was clearly established in this Circuit that it is an unreasonable response for an official to do nothing when confronted with prison conditions—like the conditions alleged in this case—that pose a risk of serious physical harm to inmates."), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007). Accordingly, at this stage, Defendants are not entitled to qualified immunity.

## III.    CONCLUSION

Plaintiff's complaint sufficiently alleged that Defendants violated his Fourteenth Amendment rights.  At the time of the events underlying this suit, it was clearly established that a prison official violates an inmate's constitutional rights where the official is aware of a substantial risk of serious harm to an inmate, including an inmate-on-inmate attack, and takes no action.  Accordingly, Defendants are not entitled to qualified immunity at this juncture, and the district court's denial of Defendants' motion to dismiss Plaintiff's § 1983 complaint is **AFFIRMED**.