[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11622
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-00588-CG-N

STEVEN SMITH,

Plaintiff–Appellant,

versus

G. SALTER,
LT. BOLEN,
CORIZON MEDICAL SERVICE,
S. BROWN,
C.O. DAILEY,

Defendants–Appellees,

WARDEN, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(November 6, 2019)

Before ED CARNES, Chief Judge, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Steven Smith, a state prisoner at the W.C. Holman Correctional Facility in Atmore, Alabama, brought this 42 U.S.C. § 1983 action against a number of defendants after he was stabbed by another prisoner. The district court entered summary judgment in favor of five of the defendants: four prison guards and the prison's healthcare provider.[1] This is Smith's appeal.

## I.

In the evening hours of June 11, 2016, another prisoner attacked Smith in his cellblock.[2] The attacker hit Smith in the head with a broken broomstick and stabbed him in the shoulder with a knife. After being stabbed, Smith jumped over a wall in the center of the cellblock and ran to the entrance gate where he saw two of the defendants, Officer Gavin Salter and Lieutenant Regina Bolar, standing outside the bars. A guard opened the gate so that Smith could escape. Smith kept running until he reached the next gate, where the guards caught up with him. They then brought him to the prison infirmary for treatment. Salter was supposed to be

---

[1] Smith's complaint named several other defendants. The district court dismissed his claims against those defendants under 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii). Smith does not appeal that decision.

[2] Because Smith is appealing a grant of summary judgment in the defendants' favor, we will recite the background facts in the light most favorable to him. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012).

the "rover" inside the cellblock that night, but instead he was standing outside the cellblock looking in.

As part of the treatment for his stab wound, Smith needed to have his bandages changed and his wound cleaned every day for the next 25 days. But the prison medical staff, who worked for a company called Corizon, LLC, only treated Smith on 11 of those 25 days. Smith developed an infection, which Corizon successfully treated with antibiotics.

On July 4, 2016, Officer Ervin Dailey went to Smith's cell to bring him to the infirmary for treatment. Dailey wanted to cuff Smith's hands behind his back, but Smith refused, saying that his shoulder injury would make it too painful. Dailey then called his supervisor, Lieutenant Deveron Brown, to ask whether he could cuff Smith's hands in the front instead. Brown said no, so Dailey cuffed Smith's hands behind his back and started escorting him down the hall. As Smith and Dailey walked by the shift office, Brown called them both inside. She asked Smith why he had wanted to be handcuffed in the front, and Smith said that he had been stabbed. Then they started arguing. Brown supposedly swore at Smith and called him a "fag"; he responded by calling her a "bitch." So she pushed him. He tripped over a locker box and fell against the wall. After the fall, Smith's back, wrists, and head hurt, but he did not suffer any new injuries requiring medical treatment. Brown sent Smith back to his cell instead of to the infirmary.

3

Smith filed this lawsuit in November 2016, alleging violations of 42 U.S.C. § 1983 and seeking compensatory and punitive damages.  He claimed that Salter and Bolar failed to protect him from the June 2016 attack; that Corizon was deliberately indifferent to his medical needs; and that Brown used excessive force against him while Dailey failed to intervene, all in violation of the Eighth Amendment.[3]  Corizon and the four prison guards filed answers and "special reports" that the district court converted into motions for summary judgment. After Smith responded, the court entered summary judgment in favor of the five defendants.  Smith appealed.

## II.

We review de novo the district court's grant of summary judgment, considering all of the evidence in the light most favorable to Smith as the nonmoving party.  See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the

---

[3] Smith sued Salter, Bolar, Brown, and Dailey for damages in both their individual and official capacities.  We agree with the district court that to the extent Smith sued those defendants in their official capacities, they have absolute immunity.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 2009).  The remainder of our analysis is about whether those defendants are liable in their individual capacities.

truth of the matter but to determine whether there is a genuine issue for trial."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### III.

The district court correctly granted summary judgment in favor of Salter and Bolar, the guards who were standing outside the cellblock on the night when Smith was attacked. Smith's claim against them has two components: one based on Salter's actions before the attack, and one based on Salter and Bolar's response to the attack. We will address each in turn.

### A.

Smith contends that Salter should have been at his post inside the cellblock when the attack happened, but was not, and as a result Salter failed to protect Smith from the attack. To prevail on his claim, Smith would have to prove (1) a substantial risk of serious harm, (2) Salter's deliberate indifference to that risk, and (3) causation. Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Proving the second element, deliberate indifference, would require Smith to show that Salter subjectively knew about a risk to his safety and that his failure to respond to it was objectively unreasonable. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

We assume for the purposes of summary judgment that Salter in fact abandoned his post. But Smith produced no evidence of deliberate indifference.

Smith has not created a genuine issue of material fact that Salter knew, before the attack, that he faced a substantial risk of serious harm as a result of Salter's absence. He never told Salter or anyone else that he was in danger of being attacked by another prisoner, and there was no evidence that he had previously been threatened or hurt by anyone in the cellblock. Cf. Caldwell, 748 F.3d at 1100–01 (reversing grant of summary judgment where the plaintiff repeatedly told the defendants that he feared for his life if locked in with his cellmate, and where the cellmate had a history of prison violence and had already set a fire in their shared cell). Smith also failed to produce any evidence showing that Salter knew that failing to patrol the cellblock created "a generalized, substantial risk of serious harm from inmate violence." Hale, 50 F.3d at 1583; cf. id. (noting that the plaintiff "presented depositions, affidavits and other evidence supporting a finding that [the defendant] subjectively knew that a substantial risk of serious harm existed at the jail").

B.

Smith contends that Salter and Bolar did not do enough to protect him after the attack began. That contention fails for want of evidence of causation. To prove causation Smith would have to show, among other things, that Salter and Bolar were "in a position to take steps that could have averted the stabbing incident." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 622 (11th Cir.

6

2007) (quotation marks omitted).  But neither Salter nor Bolar could have done anything to prevent Smith's injuries after the attack began.  Salter first became aware of the attack when he saw Smith jump over the cellblock's center wall.  And Bolar was not at the cellblock when the attack started, but instead rushed there in response to a radio call.[4]  By the time either Salter or Bolar knew what was going on, Smith had already been injured.  Smith has not created a genuine issue of material fact that his injuries were caused by Salter's and Bolar's actions.

## IV.

The district court properly granted summary judgment to Corizon.  To prevail on a § 1983 claim against a company that has contracted to provide medical care to prisoners, Smith must establish that his injury was the result of a policy or custom.  See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam).  But Smith has produced no evidence showing that Corizon had a policy or custom of inadequately treating prisoners' wounds.  So he cannot recover from Corizon.

---

[4] Smith alleged in his verified complaint that both Salter and Bolar watched as he was stabbed.  But at summary judgment we can only credit a statement in a verified complaint if it is based on personal knowledge or observation.  See Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019); United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc).  Smith's verified complaint says that he first saw Salter and Bolar standing outside the cellblock after he was attacked and ran to the gate, so his assertion that they watched the attack happen cannot be based on personal knowledge or observation.  That means there is no evidence to dispute the sworn statements in Salter's and Bolar's affidavits on this point.

7

V.

Finally, there is Smith's claim that Brown used excessive force against him in the shift office and that Dailey wrongfully failed to intervene.

Brown's use of force did not violate the Eighth Amendment because it was de minimis. See Wilkins v. Gaddy, 559 U.S. 34, 37–38 (2010) (per curiam) (stating that a de minimis use of force by a prison guard does not rise to the level of a constitutional violation). The Supreme Court has stated that "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 38 (quotation marks omitted). There is, of course, no requirement that a plaintiff suffer "some arbitrary quantity of injury" for his claim to survive summary judgment. Id. at 39. But the extent of a prisoner's injuries can shed light on the amount of force that was used against him, see id. at 37, and here the fact that Smith suffered no real harm indicates that Brown's single push was a de minimis use of force.

Smith's claim against Dailey also fails. We have acknowledged that a prison guard "who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002). But here the force that Brown used was not excessive. If Brown did not violate the

8

Constitution, Dailey cannot be held liable under § 1983 for his failure to intervene in that non-violation.[5]

**AFFIRMED.**

---

[5] Because we hold that Smith's evidence was insufficient to establish a constitutional violation, we need not consider whether any of the defendants are entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009).

9