[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11140
_____

D.C. Docket No. 7:13-cv-00036-HL


RODNEY MANYON LANE,

                                        Plaintiff - Appellant,

versus

TED PHILBIN,
SHUNDRA WOODS,
CALVIN ORR,
Deputy Warden of Security,
SHERMAN MAINE,
Captain of Security,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 26, 2016)

Before JORDAN and ANDERSON, Circuit Judges, and DALTON,[*] District Judge.

JORDAN, Circuit Judge:

Rodney Manyon Lane, a Georgia state prisoner with a third-grade education, alleged in his *pro se* handwritten complaint that he was on his way to the dining hall at the Valdosta State Prison when he was savagely attacked by another inmate who had been threatening him. The other inmate stabbed Mr. Lane four times and hit him in the face with a lock. According to the complaint, the prisoner attacked Mr. Lane because he was not a gang member and not Muslim, yet was housed in a dormitory where gang members reigned, weapons were tolerated, and violence ran amuck. Mr. Lane said that he had asked certain prison officials to move him to a different dormitory before he was attacked, but they refused his request. Mr. Lane sued four of the prison officials at Valdosta State Prison under 42 U.S.C. § 1983, asserting that their refusal to move him constituted deliberate indifference to the serious risk of serious harm he faced, and violated his Eight Amendment rights.

The district court dismissed Mr. Lane's complaint for failing to state an Eighth Amendment claim of deliberate indifference. In the district court's view, Mr. Lane failed to allege that the prison officials he sued had the requisite subjective knowledge of the risk of serious harm that he faced. Mr. Lane now

---

[*] The Honorable Roy B. Dalton, United States District Judge for the Middle District of Florida, sitting by designation.

2

appeals. Following a review of the record, and with the benefit of oral argument, we reverse. The allegations in the complaint sufficed to make out a plausible claim that the officials named as defendants were aware of the serious risk of harm faced by Mr. Lane.

## I

The district court's Rule 12(b)(6) dismissal is subject to plenary review. *See Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1206 (11th Cir. 2012). To survive a motion to dismiss, Mr. Lane's complaint must have set out facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means he must have alleged "factual content that allow[ed] the court to draw the reasonable inference that the defendant[s] [were] liable for the misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The allegations must be plausible, but plausibility is not probability. *See id.*

In this procedural posture, we assume the truth of the facts alleged by Mr. Lane. And because Mr. Lane filed his complaint *pro se*, we hold that pleading to a less stringent standard than one drafted by an attorney. That means we read his complaint liberally. *See, e.g.*, *Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir. 2011).

## II

The complaint alleged the following facts.[1]

### A

Mr. Lane was housed in E-Building at Valdosta State Prison, which consists of two separate 50-man dormitories called E1-Building and E2-Building. A single officer supervises all 100 inmates in E-Building and no officers supervise the walkway from E-Building to the dining hall. The inmate population of E-Building is made up of 90% gang-affiliated inmates.

Numerous stabbings and beatings—including those of non-Muslim and non-gang inmates—take place in E-Building because of the dangerous offenders housed there and because of the numerous weapons concealed in its two dormitories. The inmates make the weapons in various ways. For example, inmates on the maintenance detail bring back lighting rods and other scrap metal from work, which they then use to create "shanks" (homemade weapons used as knives). Some inmates also pillage the cells in E-Building, tearing out light fixture panels and locker box shelves for use as materials for weapons. Though they would search E-Building, prison officials would not confiscate weapons.

---

[1] Mr. Lane filed an amended complaint which served to supplement the initial complaint. *See* D.E. 8. The magistrate judge and the district court construed this filing together with the initial complaint, and the parties do the same on appeal. Though this procedure is irregular, *see Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982), for the purposes of this appeal so do we. The alleged facts set forth in this section therefore come from both complaints, construed together as one.

4

Administrators at Valdosta State Prison are aware of the situation in E-Building and threaten inmates housed in other dormitories with transfer to E-Building.

On the morning of June 17, 2013, while on his way to the dining hall, Mr. Lane was attacked from behind by a gang-affiliated inmate who had been threatening him. The inmate hit Mr. Lane in the eye with a lock and stabbed him four times in the back. Mr. Lane was rendered unconscious and lay on the walkway to the dining hall for several minutes before he was assisted by prison guards and provided with medical attention. He received 18 staples to close his stab wounds and his eye was glued shut. While Mr. Lane was receiving medical care, the inmate who attacked him stole all of his personal property, which was inside a locker box in his cell.

**B**

Mr. Lane filed an informal grievance with prison officials on June 20, 2013. The prison grievance form had four lines for Mr. Lane to describe the incident he was complaining about. On the form Mr. Lane stated that officials at the prison had violated his constitutional rights by not housing him in a safe environment, and that this violation had resulted in his attack three days earlier. He requested an internal investigation and a transfer out of E-Building. Captain Sherman Maine denied Mr. Lane's informal grievance, responding only that the "dorms are regularly searched for safety issues." D.E. 19-2 at 27.

5

On July 2, 2013, after denial of his informal grievance, Mr. Lane submitted a formal grievance, again on the form provided by prison officials.  He once again stated that his constitutional rights had been violated by the prison officials who failed to protect him.  He described his attack, and then indicated that he had requested a transfer to another dormitory from Counselor Shundra Woods and Deputy Warden Ted Philbin.  He also claimed that Captain Maine had failed to investigate the gang membership of inmates.

Officials at Valdosta State Prison denied Mr. Lane's formal grievance, summarily explaining that "[s]ecurity is provided in all building (living) units at [the prison]." *Id.* at 30.  Mr. Lane appealed the denial of his formal grievance, but that appeal was also denied because "[t]here [was] insufficient evidence to substantiate [Mr. Lane's] allegation." *Id.* at 32.

After the denial of his formal grievance appeal, Mr. Lane filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging deliberate indifference by Counselor Woods and Deputy Warden Philbin to the serious risk of physical harm he faced.  Mr. Lane later amended his complaint to add Captain Maine and Deputy Warden Calvin Orr as defendants.

The defendants moved to dismiss the complaint, arguing that the claims against Captain Maine and Deputy Orr should be dismissed for failure to exhaust administrative remedies, and that all claims should be dismissed for failure to state

6

a claim on which relief could be granted.  The magistrate judge issued a report recommending that the complaint be dismissed for failure to state an Eighth Amendment claim of deliberate indifference.  In the magistrate judge's view, Mr. Lane did not allege sufficient facts showing that any of the defendants had knowledge of the risk of serious harm he faced.  The magistrate judge did not address the exhaustion defense asserted by the defendants.  Nor did he analyze the other elements of Mr. Lane's Eighth Amendment claim.  The district court adopted the magistrate judge's recommendation and dismissed the complaint under Rule12(b)(6).

## III

Federal law provides a cause of action to a plaintiff who can prove that a defendant acting under color of state law deprived him of a right, privilege, or immunity protected by the laws or Constitution of the United States.  *See* 42 U.S.C. § 1983; *Rehberg v. Paulk*, 132 S.Ct. 1497, 1501–02 (2012).   There is no dispute that the prison officials sued by Mr. Lane acted under color of state law.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury.  *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994).   To establish an Eighth Amendment claim of deliberate indifference, Mr. Lane must allege facts sufficient to show "(1) a substantial risk of

serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). The narrow issue we address is whether Mr. Lane alleged sufficient facts, for purpose of his Eighth Amendment deliberate indifference claim, to make it plausible that the defendants had knowledge of the substantial risk of serious harm he faced.

## A

The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Mr. Lane had to allege conditions that were sufficiently serious to violate the Eighth Amendment, i.e., conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). As we have explained, "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (citation and internal quotation marks omitted).

Mr. Lane's *pro se* complaint sufficiently set out a substantial risk of serious harm. Mr. Lane alleged that E-Building's inmate population consisted of 90%

gang members, and that inmates who were not gang-affiliated (or who were non-Muslim) were robbed and stabbed.  And he did not stop there.  Mr. Lane further alleged that there were "numerous stabbings and beatings," that "only one officer supervis[ed] two separate [50-]man dorms [of E-Building]," and that "[E-building] housed dangerous preditors [sic] (i.e. inmates)."  D.E. 8 at 3–4.  He also described how inmates in E-Building would bring back items from their work on the maintenance detail, and take materials from light fixtures and shelves, to make weapons.  He claimed that, despite searches by prison officials, weapons were not confiscated.  Finally, of course, he alleged that he was stabbed several times by a gang-affiliated inmate.

In *Marsh v. Butler County, Alabama,* 268 F.3d 1014, 1027–28 (11th Cir. 2001) (en banc), we held a plaintiff satisfied the substantial risk of serious harm element of an Eighth Amendment claim at the pleading stage by alleging that inmates dismantled the jail facility to make weapons, that inmates had ready access to weapons, and that the prison provided inadequate supervision of inmates. Similarly in *Williams v. Edwards*, 547 F.2d 1206, 1211 (5th Cir. 1977), we noted that easy access by inmates to certain materials and resources—which resulted in the widespread possession of weapons—contributed to a substantial risk of serious harm at a correctional facility.  Mr. Lane's allegations, taken together, permit a reasonable inference that E-Building was a place with inadequate supervision of

dangerous inmates who possessed weapons, and where violence and terror were the norm. *See Gates v. Collier*, 501 F.2d 1291, 1309 (5th Cir. 1974) ("Each factor separately . . . may not rise to constitutional dimensions; however, the effect of the totality of these circumstances is the infliction of punishment on inmates violative of the Eighth Amendment, as determined by the trial court.").

**B**

The second element of an Eighth Amendment claim—the defendants' deliberate indifference to a substantial risk of serious harm—"has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (internal quotation marks omitted). The first component is subjective, so Mr. Lane needed to allege sufficiently that the prison officials he sued actually knew that he faced a substantial risk of injury. *See Caldwell*, 748 F.3d at 1099.

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Inferences from circumstantial evidence,

10

however, can be used to show that a prison official possessed the necessary knowledge. *See Caldwell*, 748 F.3d at 1099.

The district court dismissed the complaint in part because Mr. Lane had not alleged that he had been threatened or that he had informed any of the defendants of a threat of physical harm.  Although notice of threats is certainly relevant, prison officials may not escape liability just because an injured inmate did not inform anyone that he was being threatened or that he faced an attack from another inmate. *See Hall*, 50 F.3d at 1583.  As we explain, Mr. Lane sufficiently alleged that all of the officials named as defendants had subjective knowledge of the substantial risk of serious harm he faced due to being housed in E-Building.

**Counselor Woods.**  In his initial complaint, following his allegations concerning the violent conditions in E-Building, Mr. Lane stated: "[M]y counsel [sic] Ms. Woods no [sic] that." D.E. 1 at 4.  Although this was the first time that Counselor Woods' name appeared in the handwritten complaint, Mr. Lane also alleged that he had "heard *all* the administrators at V.S.P threat [sic] to put you in E Build." *Id.* (emphasis added).  It can be reasonably inferred from these allegations that Counselor Woods was aware of the violent conditions at E-Building, and that she was one of the administrators whom Mr. Lane personally heard threatening inmates with transfer to E-Building as punishment.

11

But that is not all.  On page two of his initial complaint, Mr. Lane asked himself a question: "What happened?"  *Id.* at 5.  He answered that question by alleging the following: "I asks [sic] my counsel [sic] Ms. Woods on May 8, 2012 to move me and May 23, 2012 to move me she said she don't [sic] move inmate [sic]."  *Id.*  Though unartfully phrased, a plausible inference from this allegation is that Mr. Lane informed Counselor Woods of the reason for his request—the substantial risk of serious harm of being housed in E-Building as a non-gang/non-Muslim inmate.  The inference is a fair one, we think, because the request was made just one month before Mr. Lane was attacked.  *Cf. Rodriquez v. Sec'y for Dep't of Corrections*, 508 F.3d 611, 619 (11th Cir. 2007) (holding that where inmate told a corrections officer on at least two occasions that "he feared a gang member might kill him" and requested a transfer on that basis, there was a genuine issue of material fact on the officer's subjective knowledge).  All of these allegations, taken together, plausibly show that Counselor Woods was subjectively aware of the substantial risk of harm that Mr. Lane faced due to being housed in E-Building as a non-gang/non-Muslim inmate.

**Deputy Warden Philbin.**  Mr. Lane alleged that on May 8, 2012, after he asked Counselor Woods to move him out of E-Building, he also asked Deputy Warden Philbin to transfer him.  Mr. Lane made this request on the sidewalk next to E-Building.  Deputy Warden Philbin told Mr. Lane that he needed to talk to

Sergeant Riley (first name unknown) about the request because he was the one who took care of transfers. Mr. Lane alleged that he replied that he had already asked Sergeant Riley and Ms. Woods about a transfer out of E-Building. Deputy Warden Philbin, however, got upset during the conversation. He told Mr. Lane to sue him, and said that he had been sued before. Deputy Warden Philbin then walked off to F-Building. *See* D.E. 1 at 5.

There is a plausible inference that Mr. Lane asked Deputy Warden Philbin, like Counselor Woods, for a transfer because of the dangerous conditions in E-Building. Indeed, Mr. Lane alleged that Deputy Warden Philbin was upset about the request, told Mr. Lane to sue him, and advised Mr. Lane that he had been sued before. And, to strengthen the inference even more, Mr. Lane alleged that he had heard "all" the prison administrators—which would include Deputy Warden Philbin—threaten to move inmates into E-Building as punishment.

**Deputy Warden Orr and Captain Maine.** Mr. Lane did not allege that he ever communicated a particularized threat to either Captain Maine or Deputy Warden Orr, such that they would be subjectively aware that he faced a substantial risk of serious harm due to being housed in E-Building, or that such a risk was posed by another inmate in particular. But Mr. Lane did identify Deputy Warden Orr as the "Deputy Warden of Security," and Captain Maine as the "Captain of Security"—suggesting, based on their job titles, that they were in a position to be

subjectively aware of security-related issues in E-Building. Mr. Lane also alleged that he overheard Deputy Warden Orr threaten other inmates with a transfer to E-Building, *see* D.E. 8 at 4, evidencing his knowledge of the substantial risk associated with being housed there. As to Captain Maine, Mr. Lane alleged that he had failed to confiscate weapons and shanks during searches. *See* D.E. 8 at 5. These allegations, together with the allegation that "all" prison administrators threatened inmates with transfer to E-Building, sufficiently pled awareness by Deputy Warden Orr and Captain Maine of the substantial risk associated with being housed in E-Building.

## IV

The parties agreed at oral argument that, if we reversed on the subjective knowledge element of the Eighth Amendment claim, we should remand the case to the district court to allow Mr. Lane to properly amend his complaint and to permit the defendants to respond to that amended complaint as they see fit. We think the parties' approach makes sense, so we do not address or express any views as to the sufficiency of Mr. Lane's current allegations with respect to the remaining elements of the Eighth Amendment claim.

Mr. Lane requests that he be appointed counsel to assist him in amending his complaint and pursuing his claims in the district court. Appointment of counsel for civil plaintiffs is a privilege, not a right, and is appropriate only in exceptional

14

circumstances. *See generally Smith v. Florida Dep't of Corr.*, 713 F.3d 1059, 1065 (11th Cir. 2013). This may be one of those cases that warrant appointment of counsel. *See Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (laying out five factors for determining whether the appointment of counsel is warranted in a civil case). But we leave the ultimate decision up to the district court.

The district court's dismissal of Mr. Lane's complaint is reversed. On remand, Mr. Lane should be allowed to formally and properly amend his complaint. And the defendants should be allowed to respond to the new complaint as they see fit.

**REVERSED AND REMANDED WITH DIRECTIONS.**