[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15637

_____

D.C. Docket No. 5:12-cv-00153-WTH-PRL

JAY M. BLOCK,

Plaintiff - Appellant,

versus

A. POHLING, Sergeant
Marion Correctional Institution,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 8, 2018)

Before JILL PRYOR and HULL, Circuit Judges, and PROCTOR,[*] District Judge.

---

[*] Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

PER CURIAM:

Jay M. Block was an inmate at the Marion Correctional Institution in Ocala, Florida when Corrections Officer Robert Pohling made loud, derogatory statements about Block's homosexuality.  These remarks, according to Block, led Block to be raped and assaulted repeatedly by other inmates.  Block filed a lawsuit in federal court under 42 U.S.C. § 1983 alleging that Pohling violated the Eighth Amendment through his deliberate indifference to a substantial risk of harm to Block.  Pohling moved for summary judgment on Block's claim, and the district court granted Pohling's motion.  Because Block cannot establish that Officer Pohling caused his injuries, his § 1983 claim fails; we thus affirm the district court.

## I.    BACKGROUND

Block is an openly gay former inmate at the Marion Correctional Institution in Ocala, Florida.  After reporting to a number of prison officials that he had been sexually harassed by another inmate, Block was placed in administrative confinement on September 29, 2009.  When he arrived in administrative custody, Block was placed under the control of Pohling, a corrections officer.  Upon his arrival, Block met with Pohling and two other corrections officers.  At that meeting, Pohling called Block a "fruit, f*****, and a punk" in a loud voice.  Doc.

2

5 at 8.[1]  Pohling also asked Block whether "he had ever jacked-off into a dirty sock." *Id.*  Then Pohling asked Block if he was wearing a wire, expressing the view that he, Pohling, "could be fired for how he had just spoken." *Id.*  Pohling's statements were loud enough that they could have been heard by other inmates through the wire openings at face level of the nearby cell doors.[2]  Communication between cells is common at the Marion Correctional Institution, and from their cells inmates can hear conversations and activity in the hallway.

The following day, on September 30, 2009, inmate Timothy Hippolyte was transferred to administrative confinement, and Pohling placed him in the cell with Block.  Hippolyte's previous convictions for conduct that occurred in 2000 included lewd and lascivious indecent assault on a child and lewd and lascivious battery on a child.  When he was moved to Block's unit, Hippolyte was serving a sentence for failing to register as a sex offender.  On his sentencing documents, he was identified as a "violent felony offender of special concern."  Doc. 133-7 at 1. In addition, Hippolyte had been punished for two infractions while in prison.  The first was for theft, and the second was for being disrespectful to a corrections officer.  The latter infraction led to his being placed in administrative confinement with Block.

---

[1] Citations to "Doc. #" refer to the numbered entries on the district court docket in this case.

[2] We note that Pohling denies making the statements Block attributes to him.  But at summary judgment, we must set forth Block's version of events.

"Within moments" of being placed in Block's cell, Hippolyte began exposing himself repeatedly. Doc. 5 at 9. Hippolyte told Block that he had engaged in "aggressive, assaultive, violent, and unprotected sex," with other inmates. *Id.* at 6-7. That night, Hippolyte approached Block, wrapped a bath towel around his mouth and neck, pulled down his shorts, and raped him. Hippolyte threatened Block that he must not seek help. Hippolyte repeatedly assaulted Block over the following two days.

Block was afraid to go to a corrections officer for help in light of Pohling's derogatory comments and because of "ongoing harassment" by Pohling and other officers. *Id.* at 10. Through a nurse making rounds on October 5, 2009, Block attempted to contact J.B. McFadin, a mental health specialist to whom he had previously reported a sexual harassment incident, but the specialist never received the message. On October 6, 2009, Block reported the assaults when he was taken from his cell to a meeting room where he met with McFadin as part of a routine visit. An incident report was prepared, and Block was not placed back in the cell he shared with Hippolyte. A few days later, Pohling approached Block at shower time and told him that if he "named any more officers or snitched further regarding anything that was said or done to him while in Administrative Confinement . . . [Pohling] would hurt [him] so bad he would find himself leaving the prison in a wheelchair." *Id.* at 12-13.

4

Block was sexually assaulted by an "unknown inmate" a few months later. *Id.* at 13. The inmate was being transferred from another correctional facility to a medical center, to which Block was also traveling. While Block and the unknown inmate shared a vehicle to the medical center, the inmate exposed himself to Block and attempted to force Block to perform oral sex on him.

The report of an investigation conducted by prison officials reflects that Block reported he was assaulted by multiple inmates. The report also notes that Block is "homosexual," "small in stature," and "appears to be a very defenseless individual." Doc. 133-1 at 20. The report states that "[t]hese factors appear to be the reason why he has been targetted [sic] by numerous inmates." *Id.* As a result of the assaults Block suffered in prison, he was diagnosed with post-traumatic stress syndrome, anxiety, depression, complex rape trauma, aggravated startle response, and bipolarity.

Block filed a *pro se* complaint against Pohling in federal district court under 42 U.S.C. § 1983, arguing that Pohling violated his Eighth Amendment rights through deliberate indifference to a substantial risk of harm. After filing his complaint, Block requested that the magistrate judge appoint counsel to assist him in conducting discovery, but the magistrate judge denied his request. Pohling moved for summary judgment. The magistrate judge recommended granting Pohling's motion for summary judgment on the ground that Block had failed to

show that there was a substantial risk of serious harm and that, even if he had established such a risk, he had not shown that Pohling was deliberately indifferent to that risk. The district court adopted the magistrate judge's recommendation over Block's objections. This is Block's appeal.

## II.    STANDARD OF REVIEW

We review a district court's order granting summary judgment *de novo*. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291 (11th Cir. 2012). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "tak[e] all of the facts in the record and draw[] all reasonable inferences in the light most favorable to the non-moving party." *Peppers v. Cobb Cty.*, 835 F.3d 1289, 1295 (11th Cir. 2016).

## III.    DISCUSSION

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks omitted). To establish a deliberate indifference claim for damages under § 1983, an inmate must show that (1) there was a substantial risk of serious harm, (2) the defendant was deliberately indifferent to that risk of harm, and (3) a causal connection between the defendant's conduct and the violation. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th

6

Cir. 2016). "For our purposes, the Eighth Amendment defines the contours of the first two elements and § 1983 delimits the third." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

In deciding this appeal, we assume *arguendo* that Block established the first two prongs of his deliberate indifference claim. We thus assume first that describing an inmate in derogatory terms indicating he is homosexual in the proximity of other inmates—or "branding" him, as Block refers to it—presents a substantial risk of serious harm to that inmate, especially given Block's small stature. Second, we assume that Pohling, as a prison employee and the alleged speaker of those offensive remarks, was subjectively aware of the substantial risk of danger his announcement posed to an inmate and that he disregarded that risk. Assuming these first two prongs were satisfied, we nonetheless hold that Block's deliberate indifference claim cannot survive summary judgment because he failed to establish the third prong, which requires him to show that Pohling caused the harm he suffered.

Section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LaMarca*, 995 F.2d at 1538 (internal quotation marks omitted). The constitutional deprivation must, in turn, be "a legal cause of [the plaintiff's] injuries." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982).

Here, Block failed to establish that Pohling caused his injury because he offered no evidence that any other inmate heard Pohling's derogatory comments and thus that those comments were linked to the violent attacks Block suffered.  Although Block testified that "inmates housed within administrative confinement *could have* clearly heard" Pohling's outburst, he adduced no evidence—in the form of his testimony or otherwise—that any other inmate *actually* heard Pohling's comments. Doc. 113 at 6 (emphasis added).  The evidence reflects that Pohling's statements were loud, the upper portions of inmates' cells were covered with wire only, and communication among inmates was common.  This evidence does not show that Pohling caused the attacks on Block, however, because a link between Pohling's words and the attacks on Block is lacking.

Even if a jury could reasonably infer that other inmates actually heard Pohling's remarks, uncontradicted evidence shows that Hippolyte did not hear Pohling's statements.  Hippolyte was transferred to Block's administrative confinement unit the day *after* Block arrived there, and thus the derogatory outburst by Pohling took place the day before Hippolyte arrived.  For Block to establish that Pohling caused his injury, therefore, a jury would have to infer both that an inmate actually heard Pohling's comments and that an inmate told

8

Hippolyte about those comments before Hippolyte assaulted Block. But there is simply no basis in the record for such an inference.[3]

The cases upon which Block relies, in which courts have held that "branding" inmates may establish a constitutional violation, do not present the causation problem that Block has here. In *Harmon v. Berry*, for example, Harmon alleged that a corrections officer told other inmates that Harmon had "informed on [them]" and that they were receiving "harsher disciplinary penalties than they otherwise would" because of what Harmon had said, which led to a threat on Harmon's life. 728 F.2d 1407, 1408 (11th Cir. 1984). Unlike in this case, the inmate who threatened Harmon stated that he had heard from the defendant officer that Harmon was a snitch, thus providing a direct link between the officer's conduct and the resulting harm. On these facts, we reversed the district court's order dismissing Harmon's allegations as frivolous. *Id.* There is no such link here.

We condemn the repugnant statements that Block attributes to Pohling and the violent attacks Block endured. But because Block cannot link Pohling's offensive words to the injuries he suffered, he has failed to establish an Eighth Amendment deliberate indifference claim.

---

[3] To the extent Block's § 1983 claim is also based on his sexual assault by the unknown inmate a few months after Pohling assaulted and raped him, there is no evidence connecting that assault to Pohling's comments, either. Block testified that the unknown inmate who assaulted him was being transferred from another correctional facility to a medical center in a vehicle. There is no evidence that the inmate ever: was at Marion Correctional Institution, interacted with anyone there, or otherwise heard about Pohling's comments.

9

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Pohling.

**AFFIRMED.**