[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14167
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-20408-JLK

WILLIE OWENS,

Plaintiff-Appellant,

versus

SECRETARY OF FLORIDA DEPARTMENT OF CORRECTIONS,
et. al.,

Defendants,

SERGEANT JOHNSON,
South Florida Reception Center,
DOCTOR ABIA, Wexford Health Services,
DOCTOR HOFFLER,
Larkin Community Hospital,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 30, 2020)

Before MARTIN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Willie Owens, proceeding *pro se*, appeals the district court's grant of summary judgment against his claims arising from his time in the custody of the Florida Department of Corrections.[1]  On appeal, he raises three main arguments. First, he argues that correctional officer Sergeant Lasean Johnson is liable under §1983 for failing to protect him from other inmates because she ordered him go to the recreation yard while carrying valuable items.  He also argues that two physicians are liable under §1983 because they were deliberately indifferent to his medical needs by ignoring his pain, denying him x-rays, and performing inadequate surgery on his broken arm.  After careful review, we affirm.

I.

We draw the relevant facts from Owens's sworn complaint, his deposition, and the evidence submitted.  Where disputed facts exist, we draw reasonable inferences in Owens's favor to the "*extent supportable by the record.*"  *Penley v.*

---

[1] Mr. Owens is no longer incarcerated.

*Eslinger*, 605 F.3d 843, 853 (11th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007)) (emphasis in original).

On July 17, 2015, Willie Owens was in the custody of the Florida Department of Corrections and housed at the South Florida Reception Center. That afternoon, he went to the inmate canteen and bought $98 worth of toiletry items and snack food. Following his purchase, he asked Sergeant Lasean Johnson, a prison employee, if he could take the items to his cell. She told him "no, go to the yard."[2] Owens alleges that Sergeant Johnson gave this order even though it was against administrative regulations for inmates to take "excessive" canteen items into the yard and even though she was aware that robbery was common in the prison yard and that it had occurred at least once on her watch. After some time in the prison recreation yard, Owens returned to his cell and was followed by several inmates. When he reached his cell, two of the inmates entered, demanded his canteen items, and beat him with a padlock when he refused. Owens's arm was broken during the attack.

After the assault, Owens went to the prison infirmary. In his Amended Complaint, he alleges that Dr. Inemesit Abia, the Medical Director at the South Florida Reception Center and employee of Wexford Health Sources, refused to

---

[2] Johnson denies ever interacting with Owens on July 17, 2015. We resolve this dispute of fact in Owens's favor for the purpose of this appeal.

3

treat him and sent him back to his cell.  The medical records, however, show that—as Owens admitted in his deposition—he was treated in the infirmary, transported to the local hospital, and admitted to the hospital for additional treatment on the same day that his injury occurred.  While at the Larkin Community Hospital, Owens received an x-ray of his arm; the x-ray showed a spiral fracture.  He was discharged from the hospital the following day with a "coaptation splint," a prescription for pain medication, and instructions to follow up for a reevaluation of the fracture in one week.[3]

After his discharge from the hospital, Owens returned to the prison and was housed in the infirmary under 23-hour observation.  Owens stated in his deposition that he was in the infirmary for nearly a week but that during that time, "they didn't do anything."  Prison medical records, however, reflect ongoing evaluations and medication, as well as an orthopedic consultation scheduled for July 29, 2015.

Owens was released from the infirmary and returned to the general population on July 24, 2015.  According to Owens's complaint, although he was still in pain and his arm was deformed, on that day Dr. Abia refused to treat his broken arm or allow him to receive an x-ray even when ordered to do so by the

---

[3] According to the prison medical records, the hospital medical records, and Dr. Abia's affidavit, Owens was offered the choice between surgical intervention or conservative treatment at the hospital and he declined surgery.  Owens claims he was never given such a choice.  We accept the plaintiff's version of events—and assume he was given no option—for the purpose of this appeal.

Warden. He elaborated in sworn briefing before the trial court that Dr. Abia prevented another physician from x-raying his arm.[4]

On July 30, 2015, Owens received a second x-ray of his arm.[5] This imaging demonstrated a need for surgery, and Owens was transported back to the Larkin Community Hospital where he underwent what he described as "emergency surgery" by Dr. Hoffler. Owens alleges that, during the surgery, Dr. Hoffler "incorrectly placed the rods and pins" causing him to suffer excruciating pain after the surgery. He also alleges that Dr. Hoffler failed to do any follow-up treatment for six months after the surgery and that his injuries had to be corrected "by other medical institutions and doctors." He alleges ongoing loss of functionality in his arm and excruciating pain.

In his Amended Complaint, Owens brought 42 U.S.C. § 1983 claims against Julie Jones, Secretary of the Florida Department of Corrections; Sergeant Lasean Johnson; Dr. Inemesita Abia; Dr. Charles Hoffler; Wexford Health Sources, Inc.; and Larkin Community Hospital. His claims were under the Eighth Amendment,

---

[4] Dr. Abia states that, as the Medical Director at the prison, she has limited involvement with direct patient care and principally defers to the discretion of the clinicians she supervises. She also states in her affidavit that she does not have the authority to refuse another clinician's x-ray study and that an on-site x-ray machine is available during business hours for use by any medical provider who believes that an x-ray is "clinically indicated." For the purpose of this appeal, however, we accept Owens's assertion that Dr. Abia refused to allow another physician to x-ray his arm on July 24, 2015.

[5] Although there are references in the briefing to the second x-ray being performed on July 29, 2015, the medical records reflect that it was performed on July 30, 2015. In any event, a one-day difference does not alter our analysis.

5

and he sued every defendant in both an official and an individual capacity.

Specifically, he alleged that Sergeant Johnson failed to protect him, that Drs. Abia

and Hoffler were deliberately indifferent to his medical needs, and that Secretary

Jones, Wexford Health, and Larkin Community Hospital had policies and customs

that led to his constitutional deprivations.

A magistrate judge conducted an initial screening of the Amended

Complaint pursuant to 28 U.S.C. § 1915 and issued a report with three broad

recommendations. *First*, he recommended dismissing all official capacity claims

as barred by the Eleventh Amendment. *Second*, he recommended dismissing the

claims against the Secretary of the Florida Department of Corrections, Larkin

Community Hospital, and Wexford because Owens made only conclusory

statements that those entities had customs or policies that led to a violation of his

constitutional rights. *Finally*, he recommended allowing deliberate indifference to

medical need claims against Drs. Abia and Hoffler, as well as a failure to protect

claim against Sergeant Johnson, to go forward. The district court adopted the

report and recommendation.

Following discovery, the three remaining defendants moved for summary

judgment. In a second report, the magistrate judge recommended granting the

motions. He recommended granting the motion in favor of the physicians because

Owens made no showing that the physicians disregarded his serious medical needs

6

or provided treatment that was so inadequate that it was the equivalent to no treatment at all.  The magistrate judge also recommended granting summary judgment in favor of Sergeant Johnson because Owens failed to show that she had subjective knowledge of a substantial risk of harm.  The district court adopted the report and recommendations, granted summary judgment to the defendants, and entered a final judgment against Owens.

On appeal from the final judgment, Owens raises three main issues.  *First*, he argues that the district court erred by granting summary judgment to Sergeant Johnson on his Eighth Amendment claim because she did not respond reasonably to protect him from violence at the hands of other inmates.  *Second*, he argues that the district court erred by concluding that Dr. Abia was not deliberately indifferent to his medical needs in violation of his Eighth Amendment.  *Third*, he argues that the district court erred by concluding that Dr. Hoffler was not deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[6]

---

[6] Owens makes no argument on appeal regarding the dismissal of official capacity claims. Additionally, although Owens passingly mentions defendants Julie Jones, Wexford Health Sources, and Larkin Community Hospital in his brief, he does not develop an argument against their dismissal below.  Accordingly, we do not consider those issues on appeal. *See Cole v. U.S. Atty. Gen.*, 712 F.3d 517, 530 (11th Cir. 2013) (a petitioner's arguments must be "specifically and clearly identified it in its opening brief; otherwise, the claim will be deemed abandoned and its merits will not be addressed").

II.

"We review a district court's grant of summary judgment *de novo*. Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.4 (11th Cir. 2019) (en banc) (internal citation omitted). We view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (citing *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotation marks and citation omitted).

With a pro se litigant like Owens, "summary judgment pleadings are construed liberally and specific facts alleged in his sworn complaint can suffice to generate a genuine dispute of fact." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (quotation marks and citation omitted). Nevertheless a "*pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Conclusory allegations "without specific supporting facts have no

8

probative value" at summary judgment. *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (quotation marks omitted).

### III.

The three claims Mr. Owens raises on appeal argue that prison officials were deliberately indifferent to either his physical safety or his health needs. Such claims, if proven, are actionable under § 1983 because the Supreme Court has interpreted the Eighth Amendment to prohibit deliberate indifference to an inmate's health or safety. *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002). But deliberate indifference "describes a state of mind more blameworthy than negligence" and liability is only appropriate if the "official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 835, 837 (1994). Therefore, in evaluating the district court's grant of summary judgment on these claims, we look for evidence demonstrating a genuine issue of fact regarding this state of mind.

### 1.

Owens first argues that the district court incorrectly granted summary judgment to Sergeant Johnson on his claim that she failed to protect him from violence at the hands of other inmates. To establish a § 1983 claim for deliberate indifference based on a failure to protect, Owens must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3)

causation." *Marbury*, 936 F.3d at 1233 (citing *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)).  To establish the second element, a deliberate indifference to the risk, a prisoner must both show both that an objectively serious risk of harm existed and that the prison official was subjectively aware of this risk of harm. *Farmer*, 511 U.S. at 837.  "Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference.  Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act."  *Marbury*, 936 F.3d at 1233 (internal quotation marks and citations omitted).

Here, Owens has failed to establish that Sergeant Johnson was deliberately indifferent to his safety by sending him to the yard with his canteen items.  Even if Sergeant Johnson interacted with Owens on the day of the attack—a fact that she disputes—Owens has presented no evidence that she knew that sending him to the yard would result in other inmates following him back to his cell later in the day and attacking him.  Owens himself testified that he was not aware of any danger and admitted that he never told Sergeant Johnson that he was afraid, that he thought he was being followed, or that he had experienced any previous problems on the prison yard.  Without any evidence that other inmates were harmed as a result of going to the prison yard with canteen items, or any reason to think that

10

Owens was particularly at risk of such an attack, his deliberate indifference claim must fail.

Owens make two arguments regarding Sergeant Johnson's awareness of the risk he faced. Neither argument amounts to a genuine issue of fact that would defeat the motion for summary judgment. *First*, Owens argues that sending him to the yard with "excessive" canteen items was a violation of "Florida Administrative Codes, Chapter 33." He cites no specific code provision, however, and we see none that addresses this point. Moreover, the specific regulation addressing the operation of prison canteens contains no mention of canteen items on the recreation yard. *See* Fla. Admin. Code Ann. r. 33-203.101 (2010).

*Second*, Owens argues that Sergeant Johnson had 24 years of experience and was aware that prison-yard robberies occur frequently and were likely to occur to him. Beyond this conclusory assertion, he asks the Court to take judicial notice of four Miami Herald articles addressing problems in Florida prisons. Even if such judicial notice were appropriate, these articles would not advance Owen's case. Three of the four articles were published in 2018 and could not possibly provide insight into what Sergeant Johnson subjectively knew in 2015. Moreover, the sole article published in 2015 describes only general problems plaguing the Florida prison system, including understaffing, budget shortfalls, and violence, and could not form the basis of Sergeant Johnson's alleged subjective knowledge that Owens

11

faced a risk of being robbed at the South Florida Reception Center if he went to the yard with canteen items.

In sum, the district court did not err in granting summary judgment to Sergeant Johnson because nothing in the record would allow a reasonable jury to conclude that she was subjectively aware of a risk of harm.  At best, Owens has argued that Sergeant Johnson might have been aware that a general risk of inmate violence existed in Florida prisons.  But it takes "more than a generalized awareness of risk to make out a deliberate-indifference claim." *Marbury*, 936 F.3d at 1234 (internal citation omitted).

2.

Owens also argues that Dr. Abia was deliberately indifferent to his medical needs.  Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" and violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks omitted).  To state a claim of deliberate indifference to a serious medical need, the plaintiff must establish that the defendant: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed

12

conduct beyond mere negligence. *Id*. at 1245-46. A difference in medical opinion between the prison's medical staff and the inmate as to the inmate's course of treatment does not support a claim of deliberate indifference. *Melton v. Abston*, 841 F.3d 1207, 1224 (11th Cir. 2016).

Here, the district court did not err in granting summary judgment to Dr. Abia because there is no basis in fact to conclude that she provided care that was worse than mere negligence. Although there is no dispute that Owens's broken arm qualified as a serious medical need, substantial medical documentation (much of it provided by Owens himself) demonstrates that he received extensive medical care beginning on the day of the attack and continuing for months afterwards. During his time at the South Florida Reception Center, Owens received x-rays, pain medication, a splint, inpatient monitoring in the infirmary, two admissions to the hospital, surgical intervention, physical therapy, and a number of examinations and consultations by a range of healthcare providers.

Owens's arguments that this medical care—received at the prison where Dr. Abia served as the medical director—amounted to a violation of the Eighth Amendment are unavailing. Owens's chief grievance involves Dr. Abia's decision to prevent him from receiving an x-ray on July 24, 2015. But we have held that "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for

13

medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citing *Estelle*, 429 U.S. at 107). Dr. Abia's medical judgment in this case—even if it were incorrect or in conflict with another doctor's medical judgment—did not amount to a constitutional violation. At the time that Dr. Abia purportedly denied Owens an x-ray, he had already received an x-ray during his hospital admission one week earlier, had been monitored by medical staff since his discharge, and had already been scheduled for a follow-up orthopedic consultation. Considering this documented history of caring for his injury, it was not deliberate indifference for a medical provider to refuse a diagnostic test that would only confirm what was already known—that Owens had a fractured arm. This is true even if the second x-ray that Owens received five or six days later made clear the need for surgical intervention.

Owens's other assertions that his medical needs were treated with deliberate indifference are either entirely unsupported or reflect nothing more than a (questionable) claim of medical malpractice. For example, although he alleges that he was denied proper "rehabilitation therapy," the medical records reflect—and he concedes in his briefing—he that he received at least six physical therapy sessions facilitated by the South Florida Reception Center. Elsewhere, Owens appears to argue Dr. Abia was responsible for transferring him from the South Florida

14

Reception Center to a different prison with inferior medical facilities to avoid providing him medical care.  He alleges that this transfer, after only receiving 65 days of treatment and six physical therapy sessions, led to an exacerbation of his injury.  But he presents no evidence that Dr. Abia was responsible for the transfer and, as he acknowledges in his briefing, he continued to receive medical care for his broken arm for at least another two years.  The district court did not err by rejecting such unsupported claims.  *See Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

3.

Finally, Owens argues that Dr. Hoffler, the surgeon who operated on his arm, was deliberately indifferent to his medical needs.  Specifically, he alleges that Dr. Hoffler incorrectly placed the rods and pins in his arm during surgery which caused him to experience ongoing pain and required additional medical efforts to correct.  He also alleges that Dr. Hoffler "failed to do any follow-up treatment" for six months after the surgery.

The Supreme Court has explained that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Estelle*, 429 U.S. at 106.  And we have held that "a simple difference in medical opinion between the

15

prison's medical staff and the inmate as to the latter's diagnosis or course of treatment does not support a claim of deliberate indifference." *Melton*, 841 F.3d at 1224 (citation and internal quotation marks omitted).

Here, Owens presents no evidence other than his own statement that the surgery was performed incorrectly and that he was given inadequate rehabilitation therapy. Even if we assume that this is true, it amounts, at most, to a medical malpractice claim. The notes from Dr. Hofflers post-operation examination—submitted as an exhibit by Owens—recorded that the plate and screws were "well fixed and located" with "good bony alignment" and that the injury "shows healing progression." Additionally, Dr. Hoffler supported his motion for summary judgment with an affidavit from a board-certified orthopedic surgeon who opined that the care and treatment of Owens's injury met the prevailing standard of care and did not contribute to any of his injuries. Owens has presented nothing that undermines this affidavit. On this record, no reasonable jury could conclude that the surgery performed by Dr. Hoffler, even if done incorrectly, amounted to worse than mere negligence.

Finally, Owens's assertion that Dr. Hoffler did not follow-up for six months after his surgery does not constitute deliberate indifference to his medical need. The Constitution requires the Government to provide Owens with medical care, but it does not require the Government provide him with his physician of choice

16

for post-surgical care.  Even so, Owens's statement that Dr. Hoffler did not follow up after the surgery cannot be squared with evidence that Owens himself submitted.  One of Owens's exhibits is a documented medical examination signed by Dr. Hoffler that occurred more than two weeks after the surgery.  The report details the results of an examination and recommends physical therapy, pain medication, and a follow-up examination one month later.  Owens admitted that he received physical therapy while at the South Florida Reception Center and does not provide any evidence suggesting that Dr. Hoffler's other recommendations were not followed by the prison staff.  The district court did not err in dismissing these claims.

**AFFIRMED.**