[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10494

Non-Argument Calendar

_____

JOSEPH NORMAN BROWN, III,

Plaintiff-Appellant,

*versus*

JOHN ANDERSON,
Field Training Officer, Individual Capacity,
OFFICER RICH,
Field Training Officer, Individual Capacity,
FRANGY MERANE,
Corrections Deputy, Individual Capacity,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00032-GKS-GJK

————————————

Before JORDAN, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Joseph Brown was a pretrial detainee at Brevard County Jail Complex when he was attacked by another inmate, Kqamane Brown.[1] Joseph believed that jail officials orchestrated the attack, so he, pro se, sued the officials under 42 U.S.C. sections 1983 and 1985(3) for conspiring to deprive him of his rights. The district court screened his complaint under 28 U.S.C. section 1915A and dismissed it for failure to state a claim. We affirm.

## FACTUAL BACKGROUND

One evening, Officer John Anderson saw Joseph out of his cell during a modified lockdown and ordered him to return to his cell. Joseph complied. But about ten to fifteen minutes later, Officer Anderson saw Joseph out of his cell again. Officer Anderson told Joseph to "[g]o pack your sh-t" and "[h]urry the f—k up."

———————————

[1] For ease of reference, because Joseph and Kqamane share a last name, we refer to them by their first names throughout this opinion.

Joseph inferred that Officer Anderson was sending him to lock-down.  Joseph went to his cell and packed his belongings.

About five minutes later, Officer Anderson began to escort Joseph from his cell to another housing unit in the jail.  During the escort, Joseph engaged Officer Anderson in "civil conversation" to determine why the officer "singled out [Joseph] when there were over five other inmates out of their cells."  Officer Anderson "became irate and confrontational," "rushed" at Joseph, and "yelled to [him] to, 'Back the f—k up.'"  Joseph responded, "You['re] the one who just rushed up on me."  Officer Anderson said, "Get the f—k away from the office."  Joseph complied, stepping about ten feet away to the wall.  Joseph kept asking why he was being "singled out."  Each time, Officer Anderson "raise[d] his voice" over Joseph's and said, "Shut the f—k up."  Joseph responded by invoking his free speech rights.  This exchange led Officer Anderson to rush at Joseph again and put him in handcuffs.

Officer Anderson told Joseph, "You['re] lucky[.]  I just saved your life. . . . I can[']t touch you in handcuffs."  In response, Joseph told the officer to remove the handcuffs, and the officer told a "Corporal C. Johnson," "Take this f-ggot chomo [away] before I kill him."  According to Joseph, "chomo" meant "child molester" and referred to his charges:  three counts of lewd or lascivious battery on a male.  Corporal Johnson took over the escort from Officer Anderson, but before Corporal Johnson and Joseph left Officer Anderson's presence, Joseph asked about Joseph's belongings, and Officer Anderson responded, "You won[']t need your sh-t where

you['re] going." Joseph alleged, upon information and belief, that Officer Anderson then told an "Officer Rich" and Deputy Frangy Merane to "put [Joseph] in a cell to get jumped," and that Officer Rich and Deputy Merane complied.

After Corporal Johnson and Joseph arrived at Joseph's new housing unit, Corporal Johnson removed Joseph's handcuffs and left to get a new uniform for Joseph in another area of the jail. In Corporal Johnson's absence, Officer Rich and Deputy Merane got into "a minor verbal argument" with Joseph because Joseph wanted to talk to a sergeant and Officer Rich and Deputy Merane wouldn't contact the sergeant for Joseph. Officer Rich and Deputy Merane showed Joseph to his new cell, where he "began pacing . . . , infuriated." Officer Rich and Deputy Merane spoke to the other two inmates in the cell, one of whom was Kqamane, an inmate with "a well[-]established history of attacking other detainees" who "[wa]s known for fighting." The two jail officials spoke "in a low volume" for about a minute until Corporal Johnson returned with Joseph's new uniform. Then, the three jail officials left together.

About five to ten minutes later, Kqamane attacked Joseph while Joseph was sitting on a bed. For about a minute, Kqamane repeatedly "punched and kicked" Joseph while Joseph was on the floor. Kqamane attacked Joseph in the ribs, arm, back, face, and head. After the attack, Kqamane told Joseph to kick the door to summon jail officials. When Joseph asked the reason for the attack, Kqamane said, "You know why, chomo." In Joseph's view, this

statement showed that Kqamane knew about Joseph's charges, and the only way Kqamane could have gotten the information was from Officer Rich and Deputy Merane.

Joseph kicked on the door for a minute.  Then, he "started shaking violently and fell to the floor."  Officer Rich and Deputy Merane entered the area, and Kqamane yelled to them, "Come get your chomo[.]  He needs a doctor[.] . . . I beat this cracker[']s ass."  Joseph received medical treatment from jail staff and was transported to a medical center.  He suffered "several contusions, lacerations, and abrasions on his head, face, inside lip, elbow, and wrist" from Kqamane's attack and experienced "deep pain," "humiliation, post[-]traumatic stress, fright, shock, and mental distress."

## PROCEDURAL HISTORY

Using a form complaint, Joseph brought individual capacity claims against Officers Anderson and Rich and Deputy Merane under sections 1983 and 1985(3).  Joseph alleged that the jail officials "entered into an agreement to have [him] placed in a particular cell where, after informing another inmate (who has a well[-]established history of attacking other detainees) of [Joseph's] pending criminal charges against a minor, [Joseph] would be attacked."  Joseph also moved for leave to proceed in forma pauperis.

The district court screened Joseph's complaint under section 1915A and concluded that it failed to state a plausible claim for relief.  The district court didn't mention section 1985(3).  Instead, it construed the complaint as alleging under section 1983 that the

defendant jail officials were "deliberate[ly] indifferen[t] to a substantial risk of serious harm to" Joseph from Kqamane. The district court explained that Joseph didn't "allege facts indicating that [the d]efendants had any actual knowledge of an impending risk of serious harm to him" and didn't allege that they "actually provided . . . information" to Kqamane or "were aware that providing . . . information to [Kqamane] would result in the attack on [Joseph]." Nor did Joseph claim, said the district court, that Kqamane "actually attacked him based on [his] pending criminal charges." And the district court explained that Joseph's "vague and conclusory allegations" of the defendants' agreement to put him in a cell where he would be attacked were "insufficient to merit relief." Thus, the district court dismissed the case and denied the in forma pauperis motion.

## STANDARD OF REVIEW

We review de novo a district court's dismissal of a complaint under section 1915A for failure to state a claim, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1279 (11th Cir. 2001), and we apply the same standards that govern dismissals under rule 12(b)(6), *see Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). "While we accept the factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff, the allegations must state a claim for relief that is plausible, not merely possible." *Gill v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). "Under this standard, 'threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration adopted)).

We construe pro se filings liberally. *Leal*, 254 F.3d at 1280. But we will not act as de facto counsel for a pro se plaintiff, "re-writ[ing] an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014) (quotation omitted).

## DISCUSSION

Joseph argues that the district court didn't liberally construe his complaint. If it had, Joseph asserts, it would have concluded that he alleged sufficient facts to support his section 1985(3) conspiracy claims. Joseph also contends that he would have been able to support those claims better if he was allowed to conduct discovery. And, says Joseph, he sufficiently alleged the jail officials' deliberate indifference under section 1983.

To prove a section 1985(3) claim, a plaintiff must show that the defendant conspirators acted with "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Childree v. UAP / GA AG Chem., Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996) (quotation omitted); *see id.* at 1147 ("Two types of classes come within [section] 1985(3)'s protection: (1) classes having common characteristics of an inherent nature—i.e., those kinds of classes offered special protection under the [E]qual [P]rotection [C]lause, and (2) classes that Congress was trying to protect when it enacted the Ku

Klux Klan Act."). Joseph didn't allege race- or class-based discrimi-natory animus in his complaint, so the district court properly disre-garded his section 1985(3) claims to focus on his section 1983 claims.

To prove a section 1983 deliberate indifference claim, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quo-tation omitted). "The first element . . . is assessed under an objec-tive standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). The plaintiff must allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Id.* The second element requires that the plaintiff establish the defendant's "(1) subjective knowledge of a risk of serious harm" and "(2) disregard of that risk; (3) by conduct that is more than mere negligence." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (quotation omitted).

Joseph failed to allege that the defendants were subjectively aware that Kqamane posed him a risk of serious harm. Like the district court, we disregard Joseph's conclusory allegations that the defendants conspired to have him beaten up. *See Iqbal*, 556 U.S. at 681 (explaining that conclusory allegations are "not entitled to be assumed true"); *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (explaining that we don't have to take as true allegations made upon information and belief that lack the factual support to be plausible). We are left with Joseph's supposition that "there

[wa]s no logical explanation on how [Kqamane] was able to ascertain [Joseph's] charges without [Officer Rich and Deputy Merane] providing [Kqamane] with the information" during the one-minute-long low-volume conversation that the jail officials had with "the other two inmates" in the cell.

Even if we infer that the officials told Kqamane about Joseph's charges at that time, we don't know anything else about the conversation. Joseph didn't allege that the defendants knew that Kqamane would attack him after Kqamane found out about his charges, or that they intended their conversation to lead to an attack. We would have to speculate or pile inference upon inference to get from what the complaint said to what it needed to say. And this we will not do. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring complaints to contain factual allegations that "raise a right to relief above the speculative level").

Joseph's arguments on appeal are unpersuasive.[2] His contention that the district court didn't liberally construe his complaint

---

[2] On appeal, Joseph asserts new facts about Kqamane's history of violence against inmates. Kqamane, claims Joseph, "ha[d] a history of physically attacking white inmates" and "inmates with sexual offenses" and "[wa]s gang[-]affiliated." And, Joseph says, Kqamane has seven pending charges for battery of a detainee. Joseph also submits new evidence from another inmate about Officer Anderson's involvement in the attack. But "[b]ecause this case is before us on appeal from a . . . dismissal for failure to state a claim, we limit ourselves to the allegations of the complaint." *Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1188 (11th Cir. 1997) ("[T]here may be additional facts which dictate a different result, but for now the factual boundary of this case is marked by the

depends on the old "no set of facts" test for dismissals for failure to state a claim. That test was replaced by a plausibility standard over a decade ago. *See Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) ("In 2007, the Supreme Court in *Bell Atlantic Corporation v. Twombly* retired [the] 'no set of facts' test in favor of a new formulation of [the] pleading standard." (citation omitted)). We apply the plausibility standard even in pro se cases. *See, e.g.*, *Brooks v. Powell*, 800 F.3d 1295, 1300 (11th Cir. 2015). And Joseph's argument that discovery would have allowed him to support his claims of conspiracy misunderstands the purpose of pleading. "Facial challenges to the legal sufficiency of a claim . . . , such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins" because "[s]uch a dispute always presents a purely legal question," because "the allegations contained in the pleading are presumed to be true." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (footnote omitted).

## CONCLUSION

Joseph didn't sufficiently allege the elements of a section 1985(3) claim or a section 1983 deliberate indifference claim. Thus,

---

metes and bounds of the complaint."). Thus, we disregard Joseph's new factual allegations and evidence. "We are, after all, a court of review, not a court of first view." *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019).

21-10494                Opinion of the Court                11

we affirm the district court's dismissal of his complaint for failure to state a claim.

**AFFIRMED.**